NOT FOR PUBLICATION

IN THE UNITED STATES district COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN ROBINSON, | Civil Action No. 10-4157 (PGS) |
| Plaintiff, | |
| v. | OPINION |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

SHERIDAN, U.S.D.J.

This matter is before the Court on the appeal of Plaintiff, John Robinson, of the Administrative Law Judge's ("ALJ") order denying his application for Social Security Disability Benefits. The District Court has jurisdiction under 42 U.S.C. § 205(g) and 42 U.S.C. § 1383(c)(3). Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income Benefits on July 16, 2007 alleging disability beginning on September 30, 2004[1] due to diabetes, burning sensation in his feet, and pain in his shoulders. The issue in this case is whether substantial evidence supports the Commissioner's decision that Plaintiff was not disabled from March 15, 2005 through November 12, 2009, the date of the ALJ's final decision.

I.

Plaintiff is a 55 year old man and a high school graduate. He is 5'5" and 174 pounds. In his last job in 2004, Plaintiff was employed by Exxon Oil and served as a safety watch where he worked

---

[1] Plaintiff originally alleged September 30, 2004, but later amended his alleged onset date to March 15, 2005. (R. 32).

in a tower and recorded information about the entrants to the silos. He worked at that job for two weeks. Prior to Exxon, Plaintiff worked a series of other jobs that required him to operate a fork lift, as well as to stand, walk, and lift or carry products up to fifty pounds. In another previous job, Plaintiff drove a van for Howmedica and loaded and unloaded packages, which sometimes contained implants weighing up to 75 pounds. He also worked as an orderly at St. Elizabeth Hospital between 1992-1999. He stopped working in 2004 due to the pain in his feet and joints.

Currently, Plaintiff lives with his 29 year old son. His daily activities include taking a shower, assisting others in making breakfast, light dusting, watching television, cleaning, and napping.

## II.

The issues here revolve around two contentions of Plaintiff. The first concern alleges bias by the ALJ against the Plaintiff's attorney. On that matter, I found no bias existed and my reasons were set forth on the record during oral argument.

The second issue concerns whether the ALJ erroneously failed to have a vocational expert testify about the non-exertional nature of Plaintiff's diabetes, and his environmental impairments at step five of the sequential evaluation. This issue is discussed below.

Plaintiff's argument may be split into two parts. The first is whether diabetes is a non-exertional impairment requiring the testimony of a vocational expert; and the second is whether the Plaintiff had environmental limitations that should have been considered by a vocational expert.

According to Plaintiff, diabetes is a "non-exertional impairment" because diabetes "has nothing to do with strength" (ability to lift and carry); but impinges upon a person's "equilibrium, sensation and other factors including pain" (Plaintiff's Brief, p. 12). With regard to same, diabetes is a listed impairment under 20 CFR 404.1520(c), and 416.920(c). In order to qualify as severely

disabled on account of diabetes under 20 C.F.R. Pt. 404, Subpt. P, App. 1, a person must be able to demonstrate: A. Neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C); or B. Acidosis occurring at least on the average of once every 2 months documented by appropriate blood chemical tests (pH or pCO2 or bicarbonate levels); or C. Amputation at, or above, the tarsal region due to diabetic necrosis or peripheral arterial disease; or D. Retinitis proliferans; evaluate the visual impairment under the criteria in 2.02, 2.03, or 2.04. The ALJ analyzed Plaintiff's diabetes under those listings as well as the associated symptoms throughout his opinion. For instance, the ALJ relied on the report of Dr. Patel with regard to diabetes. The ALJ found

> The claimant has had a severe impairment involving diabetes mellitus (20 CFR 404.1520(c) and 416.920(c).
>
> At the request of DDS, the claimant underwent an internal medicine consultative examination with Rambhai C. Patel, M.D. on February 21, 2008. The diagnosis was diabetes mellitus, possibility of diabetes neuritis, hypertension and possibility of arthritis of the right shoulder without permanent deformity. The physical examination revealed that the claimant was walking with a normal gait and without the assistance of a cane. The chest x-ray was normal. There was no vascular involvement and no swelling in the joints, no rub or any tenderness noted (Exhibit IF).

In addition, the ALJ relied on Dr. Wilfredo Cruz. His findings were similar to Dr. Patel. The ALJ discussed Dr. Cruz's report:

> The claimant complained of diabetes, burning sensation in his feet and pain in his shoulders. The physical examination was basically unremarkable. A laboratory report dated May 30, 2008 shows a glucose reading of 160. The diagnosis was diabetes, hypertension, hyperlipidemia, and beginning peripheral neuropathy (Exhibit 6F).

Despite this review by the ALJ, Plaintiff argues that Plaintiff's diabetes is an impairment of the

endocrine system, and that the ALJ should have evaluated them accordingly. This argument lacks merit. The ALJ addressed that point directly. The ALJ decided:

> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> In making this determination, I have given particular attention to the impairments set forth in 9.00 (Endocrine System); however, the record does not contain the specific findings required by that section. The claimant's diabetes mellitus does not satisfy 9.08. The claimant does not have neuropathy in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station that satisfy the requirements of 9.08A.

Hence, all of Plaintiff's diabetic symptoms were addressed by the ALJ and do not meet or medically equal the requirements of the listing.

With regard to plaintiff's allegations of occasional episodes of memory loss which may have somehow related to the diabetes, the ALJ considered the report of Ernesto Perdomo, Ph.D. The ALJ found:

> The claimant also underwent a psychological consultative examination with Ernesto Perdomo, Ph.D. on March 4, 2008. There were no psychiatric medical records. The examination revealed his thought process was well organized and focused. He had no hallucinations or delusions. The claimant denied having depression or anxiety. The examiner noted that the claimant's problems appeared to be only physical (Exhibit 2F).
>
> * * *
>
> The state agency medical consultant completed a psychiatric review technique form and concluded the claimant had no medically determinable mental impairment (Exhibit 3F). The evidence fails to establish a severe mental impairment.


Having concluded that there was no mental impairment, and having considered the physical symptoms of Plaintiff as well as his Residual Functional Capacity, the ALJ found Robinson could perform a full range of light work. He can lift and carry objects weighing up to 20 pounds; frequently lift and carry objects weighing up to 10 pounds; stand, walk, and sit up to six hours in an eight hour day; push and pull arm and leg controls. In short, there does not appear to be any diabetes related symptoms that the ALJ failed to consider, or which would require a vocational expert to evaluate.

The second part of Plaintiff's argument concerns environmental restrictions set forth in Dr. Schneider's report dated March 20, 2010, and that such non-exertional limitations should have been evaluated by a vocational expert. From reading the ALJ's decision, it does not appear that these environmental restrictions were assessed by the ALJ. Dr. Schneider was the first physician to find that Mr. Robinson could not frequently be exposed to extreme cold, heat, wetness, humidity and hazards. From reviewing the entire record, it appears that environmental limitations were never alleged by the Plaintiff in his claim except for one instance on administrative appeal[2]. For example, the original questionnaires answered by Mr. Robinson on August 23, 2007 do not mention these environmental restrictions (R. 107); the symptoms were not mentioned at the October 8, 2009 hearing before the ALJ; nor in Robinson's brief to this court filed on January 3, 2011. During oral argument here, Robinson's attorney emphasized those limitations much to the surprise of the

---

[2] On January 10, 2010, the environmental restrictions were curtly mentioned in a letter from Mr. Alter, Plaintiff's attorney, to the Appeals Council wherein he wrote:

> In addition, the ALJ found no non-exertional impairments whatsoever and therefore no non-exertional restrictions, justifying the direct application of the vocational rules. Yet, the State Agency physicians found Plaintiff limited in his toleration of extremes of temperature, wetness, humidity, vibration and hazards.

government! Since these environmental restrictions were never evaluated or litigated before the ALJ; the government has had no opportunity to prepare and respond. The Plaintiff is not entitled to remand for reconsideration of new evidence. *See Plaza v. Barnhart*, 218 Fed. Appx. 204, 207 (3d Cir. 2007).

### III.

In making his final determination that Plaintiff was capable of performing the full range of light work, the ALJ found that Plaintiff's testimony lacked credibility. This was based on Dr. Schneider's report who found "the severity and duration of the symptoms are not fully proportionate to the expected and not fully consistent with the totality of the MER. Similar to Dr. Schneider's assessment that the symptoms. The ALJ found:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairment could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> The claimant's treatment for diabetes has been conservative and non-aggressive. According to the claimant, he has been insulin dependent for about 13 to 15 years. The medical evidence does not indicate any emergency room visits or hospitalizations tor the treatment of his diabetes. There is also no evidence of any end organ damage caused by diabetes. The claimant also complains of foot problems and joint aches. The evidence fails to show any diagnostic tests to indicate that the claimant's complaints are credible.

Generally, "[t] he credibility of witnesses is quintessentially the province of the trial court, not the appellate court." As such, the Court defers to the ALJ's credibility determinations. *Dardovitch v. Haltzman*, 190 F.3d 125, 140 (3d Cir. 1999). Hence, based upon the above discussion, the Commissioner's decision is supported by substantial evidence in the record as a whole, and is affirmed. 42 U.S.C. §§ 405(g), 1383(c)(3).

_____   7/15/11
PETER G. SHERIDAN, U.S.D.J.